**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| Shanell Royal | * | |
| | * | |
| v. | * | Civil Action No. CCB-19-2825 |
| | * | |
| Jane Kirschling | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| Shanell Royal | * | |
| | * | |
| v. | * | |
| | * | |
| University of Maryland Graduate | * | Civil Action No. CCB-19-2826 |
| School & School of Nursing — Doctor | * | |
| of Nursing Practice, *et al.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

Shanell Royal, proceeding *pro se*, filed two actions, both stemming from an incident between her and a clinical instructor while she was a student at the University of Maryland School of Nursing ("UMSON")—Doctoral Nursing Program ("DNP"). Now pending in Case No. 19-2826 are the motion for leave to amend the complaint (ECF 12), the motion to consolidate (ECF 14), the motion for leave to amend the complaint to correct the defendant's name (ECF 16), Teckla Chude's motion to dismiss (ECF 20), the university defendants'[1] motion to dismiss (ECF 24), and Shannon Seifert's motion to dismiss (ECF 25). Now pending in Case No. 19-2825 are the motion for leave to file an amended complaint (ECF 10), the motion to consolidate (ECF 12), and Kirschling's motion to dismiss (ECF 18).[2]

---

[1] The "university defendants" are: the University of Maryland, Dr. Kelly Malapanes-Aldrich, Dr. Veronica Amos, Dr. Michelle Gonzales, Dr. Margaret Hammersla, Dr. Shannon Idzik, Dr. Jane Kirschling, Ann Mech, Dr. Kathleen Michael, Jacqueline Mitchell, Tricia O'Neill, Dr. Joseph Pelligrini, Dr. Peter Rock, Dr. Roger Ward, and Suzanne Wozenski. Teckla Chude and Shannon Seifert filed separate motions to dismiss.

[2] The court will grant the university defendants' motion for extension of time to respond to the complaint (ECF 9) in No. 19-2826, and Kirschling's motion for extension of time (ECF 9) in No. 19-2825.

## FACTS

Royal was enrolled at UMSON-DNP from Summer 2014 to Summer 2016. (ECF 12-1, Am. Compl. at 6, ¶ 10).[3,4] UMSON is a state educational institution that receives federal funds. (*Id.* at 6, ¶ 8). In April 2016, as part of the program, Royal was working under Shannon Seifert, the clinical coordinator for UMSON at Medstar Union Memorial Hospital, and Seifert was to grade Royal on her performance. (*Id.* at 6, ¶ 11). On April 26, 2016, while in a patient's room and in view of several witnesses, Seifert shouted at Royal, "You are f—ing stupid, just stupid. What the f— are you doing?" (*Id.* at 6–7, ¶ 12). He placed his body within 10 inches of Royal "and continued to verbally assault her." (*Id.*). A surgeon intervened, and Seifert informed Royal she was relieved of OR duty and was required to work with someone else other than him. (*Id.*).

Seifert failed Royal for two days she worked for him, April 25 and 26, 2016. (*Id.* at 7, ¶ 13). Royal learned of these fail days on April 27, 2016, and asked Seifert the reason for the low grades. Seifert "violently berated [Royal] about providing dangerous patient care as well as her alleged failures as an anesthesia nurse" and "directed [Royal] towards the anesthesia machine." (*Id.*). Seifert's body "was less than 5 inches from [Royal's] breasts" and "he pointed his finger within 1 inch of her face and body" and repetitively told her, "Shut your mouth. Just shut your f—ing mouth." (*Id.*). Royal "sens[ed] impending physical harm" so she "repositioned herself away from [] Seifert towards the door." (*Id.*). As she was leaving, Seifert stated, "It's not my fault what your teachers are going to do to you." (*Id.*).

After the Seifert incident, Royal contacted officials at UMSON about Seifert's conduct and its impact on her grades. She contacted Jacqueline Mitchell (Director of Clinical Education),

---

[3] The following factual allegations are taken from the amended complaint (ECF 12-1) in Case No. 19-2826. The factual allegations in the amended complaint (ECF 10-1) in Case No. 19-2825 are largely the same. Additionally, the numbering of paragraphs in the amended complaint in No. 19-2826 restarts at the "claims" section, so the court will cite to the page number in addition to the numbered paragraph.
[4] Unless otherwise indicated, citations to CM/ECF correspond to docket entries in No. 19-2826.

Joseph Pelligrini (Director of the Nurse Anesthetist Program), and Veronica Amos (Assistant Director of Nurse Anesthesia), who were apparently unsympathetic to Royal and denied her request to continue under another clinical instructor. (*Id.* at 7–8, ¶¶ 14, 15). Royal also sent at least one email on May 3, 2016, to Kathleen Michael (Chair of the Department of Organizational Systems and Adult Health), Shannon Idzik (Associate Dean of the DNP Program), and Jane Kirschling (Dean of UMSON), outlining her complaints about the program. This May 3 email was attached by the university defendants to their motion to dismiss. (ECF 24-10).[5] According to Royal, she sent an email on May 2 to Kirschling, Mitchell, and Idzik, and another email on May 3 to the Dean of the graduate school. (Am. Compl. at 8, ¶ 16). It is not clear if one of those is the May 3 email attached to the motion to dismiss, or if they are additional emails.

The May 3 email discussed the Seifert incident as well as many other issues with the nursing program. (ECF 24-10). According to a letter from Tricia O'Neill (Assistant Vice President of Academic Affairs) to Royal dated May 27, 2016, and attached to the university defendants' motion to dismiss, the email provided sufficient information to allege violations of the Family Educational Rights and Privacy Act ("FERPA"), and Royal was informed the university would begin investigating. (ECF 24-11, May 27 letter from O'Neill to Royal). The May 3 email was also construed as alleging a violation of Title IX of the 1972 Education Amendments, based on Royal's allegation of "clinical preceptors who have a known proclivity to make inappropriate sexual or vile remarks to students," but O'Neill informed Royal that there was not enough information to proceed, and that Royal could supply additional information. (*Id.*).

---

[5] As discussed *infra*, the court may consider this email, as well as other correspondence regarding Royal's complaints against the school, on a motion to dismiss. The email was also attached to Kirschling's motion to dismiss in Case No. 19-2825. (ECF 18-3).

Because of the Seifert incident and the university's response, Royal's ability to perform was "severely hampered" and her physician "placed [Royal] on temporary leave not directly associated to medical reasons." (Am. Compl. at 8, ¶ 17). A few days later, Kirschling, Pelligrini, Amos, and Mitchell requested that Royal take an indefinite leave of medical absence based on medical grounds not disclosed to Royal. (*Id.* at 8, ¶ 18). According to Royal, she did not request indefinite medical leave, submit documentation regarding indefinite medical leave, or receive official documentation from Kirschling. (*Id.*). Royal's return to school was subject to (or at least later became subject to) evaluation by the school and a health professional of the school's selection. (ECF 24-5, September 16 letter from Hammersla to Royal).

It appears that the university at some point did investigate a Title IX complaint from Royal. According to Royal, after she received notice of the medical leave, she received an email from Ann Mech (Director of Legal Affairs) that Roger Ward's[6] office would contact her regarding her Title IX complaint, but she never heard from Ward's office. (Am. Compl. at 9, ¶ 19). Royal appealed the leave notice and "[i]n response, the Dean completed a Title IX investigation within two" days, finding "no evidence to support the claim for [Royal's] medical leave of absence." (*Id.* at 9, ¶ 20).[7]

In May 2016, Royal attempted to enroll in the 2016 summer session but was denied. (*Id.* at 9, ¶ 23). Her enrollment in the Fall 2016 session was denied as well. (*Id.*). It appears that, in relation to her attempted enrollment in the summer session, Royal alleges that Dr. Aldrich-Kelly,[8] Pelligrini, Amos, and Mitchell improperly shared Royal's medical and/or educational

---

[6] Roger Ward is Chief Accountability Officer, President of Operations and Planning, and Vice Dean of the Graduate School.
[7] It is not clear how the Title IX investigation concerned Royal's medical leave of absence. This may be a typo, as Royal's other amended complaint in Case No. 19-2825 states that the Dean found "no evidence to support the claim for [Royal's] Title IX complaint." (Am. Compl. ¶ 23).
[8] Based on the case caption, it appears this individual is Kelly Aldrich-Malapanes, nursing adjunct professor. In the university defendants' motion to dismiss, she is referred to as Kelly Malapanes-Aldrich.

records.  (*Id.* at 9, ¶¶ 22, 24).  Royal informed O'Neill of this on June 27, 2016, which prompted a "potential" investigation into violations of FERPA.  (*Id.*).  On July 7, 2016, O'Neill stated that the alleged FERPA violations "were unsubstantiated without performing an investigation" and "denied [Royal] the opportunity to appeal."  (*Id.* at 10, ¶ 26).

Royal's doctor extended her sick leave via note on May 23, 2016.  (*Id.* at 9, ¶ 21).  On June 27, 2016, Royal provided the Dean and the administration of the DNP program another medical note extending her medical leave.  (*Id.* at 9–10, ¶ 24).

It appears that at some point Aldrich wrote a letter alleging that Royal engaged in academic misconduct.[9]  (*Id.* at 10, ¶ 25).  On June 29, 2016, Susan Wozenski (Assistant Professor) informed Royal that she needed to return to the school to face disciplinary action, but Royal did not attend because "she was under the understanding that her absence from the school was solely based on medical grounds."  (*Id.*).  On July 26, 2016, O'Neill scheduled a preliminary hearing on academic misconduct for the Fall 2016 semester.  (*Id.* at 10, ¶ 27).

On September 3, 2016, Royal appealed the decision to place her on a medical leave of absence pending an evaluation by the school and the school's chosen health professional.  (ECF 24-5, September 16 letter from Hammersla to Royal).  The appeal was considered by the faculty review panel.  (*Id.*).  According to Royal, on September 20, 2016, Margaret Hammersla (Co-Director of the Adult Gerontology Primary Care Nurse Practitioner Specialty Program) informed Royal that "if she continued to pursue the appeals process, [her] medical diagnosis would be widely disclosed."  (*Id.* at 11, ¶ 29).  Hammersla emailed Royal on September 23 and informed her that the faculty review panel was reviewing Royal's appeal of her medical leave of absence,

---

[9] It appears Royal was suspended from clinical rotations for receiving three fail days and did not attend a mandatory meeting to arrange a clinical remedial plan.  (*See* ECF 24-5, September 16 letter from Hammersla to Royal).  It is not clear whether this is the "academic misconduct" Royal refers to, and Royal does not explain further the alleged academic misconduct.

and "it is your decision whether to request that the School change your educational record to show you would be considered summarily suspended for unprofessional behavior, instead of your current status which is an involuntary medical leave of absence." (*Id.* at 11, ¶ 30). On September 28, 2016, the faculty review panel, with approval from the Dean, changed Royal's temporary medical leave to indefinite medical leave pending "the condition that you may return to School only after being evaluated and deemed fit to satisfy all essential requirements of the program by the School and a health professional of the School's selection." (*Id.* at 11, ¶ 31; *see also* ECF 24-6, September 28 letter regarding the appeal of indefinite medical leave of absence).

Later, Royal submitted a January 2, 2017, note from her personal physician clearing Royal of any and all medical concerns and stating she could return to full duty without any restrictions. The Dean, however, informed her she could not re-enroll unless University of Maryland medical staff examined her and she agreed to a clinical probation period. (Am. Compl. at 11–12, ¶ 32).

Royal filed two complaints in the Circuit Court for Baltimore City on August 26, 2019. The first complaint was filed against UMSON as well as sixteen individual defendants,[10] including Dean Kirschling. (No. 19-2826, ECF 2). The second complaint was filed against Kirschling only. (No. 19-2825, ECF 2). It is generally duplicative of the first complaint, except it contains a count against Kirschling for "denial of reinstatement." The defendants removed both cases to this court on September 25, 2019. Royal filed motions to amend both complaints on October 15, 2019, to remove defendant Teckla Chude, and to sue all defendants in their individual and official capacities. (No. 19-2826, ECF 12; No. 19-2825, ECF 10[11]). The motions are unopposed and will be granted. Additionally, since Royal has removed Chude from her

---

[10] They are the individual university defendants listed in note 1, as well as Teckla Chude and Shannon Seifert.
[11] Chude was not named as a defendant in Royal's original complaint in No. 19-2825, as it was only against Kirschling.

amended complaint, Chude's motion to dismiss also will be granted.[12]  Royal filed another

motion to amend (No. 19-2826, ECF 16) to correct Margaret Hammersla's name, which also will

be granted.

Royal's amended complaint in No. 19-2826 contains seven counts.  She alleges denial of

procedural and substantive due process (Count I); defamation of character (Count II); civil rights

violations (Count III); FERPA violations (Count IV); Rehabilitation Act and Americans with

Disabilities Act violations (Count V); Title IX violations (Count VI); and intentional infliction of

emotional distress (Count VII).  In No. 19-2825 (which is against Kirschling only), Royal alleges

denial of procedural and substantive due process (Count I); violations of Title IX (Count II.a);

denial of reinstatement (Count II.b),[13] FERPA violations (Count III); Rehabilitation Act and

Americans with Disabilities Act violations (Count IV); and intentional infliction of emotional

distress (Count V).[14]

## STANDARD OF REVIEW

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to

raise a right to relief above the speculative level on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (citations omitted).  "To satisfy this standard, a plaintiff need not 'forecast' evidence

sufficient to prove the elements of the claim.  However, the complaint must allege sufficient

facts to establish those elements."  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012)

(citation omitted).  "Thus, while a plaintiff does not need to demonstrate in a complaint that the

---

[12] The court will grant the motion to dismiss Chude, instead of denying it as moot, because there was no notice of dismissal filed and it appears Chude is still a defendant in No. 19-2826.

[13] Because the Title IX and denial of reinstatement claims are both listed as "Count II," the court will refer to them as "Count II.a" and "Count II.b," respectively.

[14] The claim for intentional infliction of emotional distress is labeled as Count VII, but because it is the fifth count in this complaint, the court will refer to it as "Count V."

right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart,* 680 F.3d 359, 365 (4th Cir. 2012)).

Because Royal is proceeding *pro se*, the court will construe her complaint "liberally" and hold it to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

## ANALYSIS

I.     Claims against Seifert

Seifert has filed a motion to dismiss the two claims against him, for civil rights violations and for intentional infliction of emotional distress ("IIED"), arguing that he was not properly served and the claims are time-barred. According to Royal, she sent the complaint and summons via certified mail to Seifert's supervisors, Dr. Robert Shapiro and Dr. David J. Sinopoli. (ECF 31, Opp'n at 4; ECF 31-1, return receipts addressed to Shapiro and Sinopoli). Although Federal Rule of Civil Procedure 4 does not provide for service of individuals by certified mail, under 4(e)(1), service may be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" In Maryland, service may be made "by mailing to the person to be served a copy of the summons, complaint, and all other papers filed with it by certified mail[.]" Md. Rules 2-121(a)(3). Here, it is not clear why Royal mailed the complaint and summons to Seifert's

supervisors instead of him, and it does not appear that Shapiro or Sinopoli were "agent[s] authorized by appointment or by law to receive service of process for" Seifert. Md. Rules 2-124(b).

Royal also left a copy of the complaint and summons at Seifert's front door. (ECF 19, return of service). Neither the federal rules nor Maryland rules allow for this, as they require that the complaint and summons be left with a person of suitable age and discretion at the home of the person to be served. Fed. R. Civ. P. 4(e)(2)(B); Md. Rules 2-121(a)(2). Therefore, it does not appear that Seifert was properly served. Additionally, Royal has not presented good cause to extend the time limit for service, which is 90 days after the complaint was filed. Fed. R. Civ. P. 4(m). Accordingly, dismissal is warranted, and the court will dismiss without prejudice the complaint as to Seifert.[15] *Id.; Tann v. Fisher,* 276 F.R.D. 190, 195–96 (D. Md. 2011), aff'd, 458 F. App'x 268 (4th Cir. 2011).

II.     Outside material

The defendants have attached various documents to their motions to dismiss. In reviewing a Rule 12(b)(6) motion to dismiss, the court may "consider documents incorporated into the complaint by reference . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (internal quotation marks and citations omitted). The court will consider the following documents: Seifert's April email regarding Royal's fail days evaluation, the student handbook, the Title IX policy and procedures,

---

[15] Because the court dismisses the complaint without prejudice, it does not reach Seifert's argument that Royal's claims against him are time-barred. In any event, the statute of limitations may have now run on Royal's claims, even based on her understanding of when her causes of action accrued. "This dismissal without prejudice does not permit Plaintiff 'to refile without the consequence of time defenses, such as the statute of limitations.'" *Tann*, 276 F.R.D. at 196 n.4 (citation omitted).

correspondence from Margaret Hammersla regarding Royal's medical leave of absence, Royal's May 2016 email where she alleges an unsafe clinical environment, correspondence between Royal and Tricia O'Neill regarding Royal's complaints, and Royal's notifications to the defendants about her medical leave. These documents are referenced in and relied on in Royal's amended complaints, and Royal has not challenged their authenticity. Tricia O'Neill's declaration (ECF 24-9) is not referenced or relied on in the complaint, is not integral to the complaint, and the court will not consider it.

Royal argues that she should have a reasonable opportunity for discovery before the court converts the defendants' motions to dismiss to ones for summary judgment. The court, however, can consider the above documents without converting the motions to dismiss. Therefore, Federal Rules of Civil Procedure 12(d) and 56(d) are not relevant.

### III. Denial of Due Process

#### A. Procedural Due Process

Royal alleges in Count I that Kirschling, Pelligrini, Amos, Mitchell, and Aldrich-Malapanes denied her procedural due process when they "failed to adjudicate [Royal's] allegations" of Seifert's improper actions with regard to him giving her failing grades and verbally assaulting her. (*See* No. 19-2826, Am. Compl. at 14, ¶ 12; No. 19-2825, Am. Compl. ¶¶ 42–43 (against Kirschling)). It also appears that she alleges a due process violation with regard to "the supposed need to place [Royal] on indefinite medical leave then arbitrary academic dishonesty."[17] (No. 19-2826, Am. Compl. at 14, ¶ 12). In her opposition, Royal argues that "she was not provided a fair and equitable arena to be heard." (ECF 32, Opp'n at 9).

---

[17] As noted above, it is not clear what "academic dishonesty" refers to, as it does not appear that Royal was accused of academic dishonesty.

Initially, this claim appears to be brought under the Fourteenth Amendment to the U.S. Constitution and Article 24 of the Maryland Declaration of Rights. Because they are generally interpreted *in pari materia,* and the parties have not provided a good reason not to do so, the analysis for each will be the same.[18] *See Allmond v. Dep't of Health & Mental Hygiene*, 448 Md. 592, 609 (2016). Royal states that this count is brought against Kirschling, Pelligrini, Amos, Mitchell, and Aldrich-Malapanes "in their official and personal capacities for damages." It appears, though, that Royal may also be requesting injunctive relief. (No. 19-2826, Am. Compl. at 21). Therefore, the court will interpret Count I as both a direct action under the Fourteenth Amendment seeking injunctive relief, and as a claim under 42 U.S.C. § 1983[19] seeking damages. *See Hodge v. Coll. of S. Maryland*, 121 F. Supp. 3d 486, 495–96 (D. Md. 2015).

To prevail on a due process claim, the plaintiff must show "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 314 (4th Cir. 2012) (citation omitted). "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings

---

[18] Royal argues that the court may treat Article 24 differently than the 14th Amendment, but does not explain how or provide any further support for that her allegations state a claim under Article 24 even if they do not under the 14th Amendment.

[19] Section 1983 provides that "[e]very person who, under color of [state law] subjects . . . any . . . person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . ." 42 U.S.C. § 1983. "In order to state a claim under Section 1983, a plaintiff must allege: (1) a deprivation of a constitutional right or some right secured by the laws of the United States, and (2) that the deprivation was caused by a state actor." *Hodge*, 121 F. Supp. 3d at 499.

To the extent that Royal sues the defendants in their official capacities, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989), which here would be a school within the University of Maryland system, and thus a unit of the state, *see Stern v. Bd. of Regents, Univ. Sys. of Maryland,* 380 Md. 691, 702 (2004). As the state is not a "person" within the meaning of § 1983, *Will*, 491 U.S. at 64, Royal may not bring a § 1983 claim against the defendants in their official capacities. Additionally, to the extent that Royal sues Maryland, the defendants have not raised the defense of sovereign immunity (except as to the denial of reinstatement claim against Kirschling, which will be discussed *infra*). Regardless, because the court will dismiss both of Royal's complaints, it need not address any immunity argument.

that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). It appears that Royal alleges she was deprived of a property interest, not a liberty interest. (*See* No. 19-2826, Am. Compl. at 14, ¶ 13; ECF 32, Opp'n at 10 (property interest in scholastic environment)).

"[Due] process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). In the academic setting, courts have distinguished between academic and disciplinary decisions. Disciplinary decisions generally require notice and an opportunity for the student to "characterize his conduct and put it in what he deems the proper context." *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 86 (1978) (citation omitted). On the other hand, academic decisions do not require a hearing. *See id.* at 90. Rather, in the context of academic dismissal, the Supreme Court has held that when a student was "fully informed [] of the faculty's dissatisfaction with her clinical progress and the danger that this posed to timely graduation and continued enrollment" and the dismissal decision was "careful and deliberate," the requirements of due process were satisfied. *Id.* at 85; *see also Brown v. Rectors & Visitors of Univ. of Virginia,* 361 F. App'x 531, 532–33 (4th Cir. 2010) [20] ("Procedural requirements are greatly reduced, however, when a student is dismissed for academic, as opposed to disciplinary, reasons" and citing *Horowitz*).

Investigation of Royal's allegations against Seifert

With regard to the alleged failure to adjudicate Royal's allegations against Seifert, Royal has failed to state a procedural due process violation. Royal claims that she has a property interest in "a fair and balanced scholastic environment devoid of verbal assault." (ECF 32, Opp'n at 10). As to the failing grades, Royal does not sufficiently allege a property interest in

---

[20] Unreported cases are cited for the soundness of their reasoning, not for any precedential value.

receiving a passing grade.  *Hodge*, 121 F. Supp. 3d at 500 ("Plaintiffs have not established that

Mr. Hodge had a protected property or liberty interest in receiving a 'C' in his math course.").

Even assuming Royal had an entitlement to a fair grade, there is no indication that Seifert did not

make a "careful and deliberate" decision regarding the grades.  Although Royal refers to

Seifert's "duplicitous grading strategy," (No. 19-2826, Am. Compl. at 7, ¶ 14), and notes he had

previously given her positive evaluations, (*id.* at 6, ¶ 11), Royal has not made any allegations that

Seifert's decision to give her failing grades for the two days was not "careful and deliberate."

Moreover, Seifert's email to Jacqueline Mitchell on April 27, 2016, provides his reasons for

failing Royal for the two days, (ECF 24-3), further indicating the decision was careful and

deliberate.

Royal also has not sufficiently alleged that she has a property interest in the school

investigating and/or taking action against Seifert with respect to the alleged verbal assault.[21]  In

*Kearney v. Maryland*, a state employee alleged that her supervisor did not fully and vigorously

investigate her claims of sexual abuse, harassment, and threats.  No. CIV.A. ELH-12-2754, 2013

WL 3964995, at *7 (D. Md. Aug. 1, 2013).  Here, Royal similarly alleges that she had an

entitlement to an investigation or adjudication, by the university, of Seifert's conduct.  In

*Kearney*, the court noted that "the Fourth Circuit has rejected the existence of a due process

liberty interest in investigative procedures," *id.* at *9, and that the court was "unaware of any

authority indicating that an employee possesses a constitutionally protected property interest in a

particular investigative process for workplace complaints," *id.* at *11.  Further, "Maryland

appellate courts have declined to recognize 'a Constitutionally-based property interest

---

[21] It appears that some investigation was conducted with respect to Royal's allegations, (No. 19-2826, Am. Compl. at 9, ¶ 20), although, with respect to allegations about sexual misconduct and sex and gender-based discrimination, the investigation focused on Royal's allegation that clinical preceptors made inappropriate or vile remarks.  (ECF 24-11, May 27, 2016, letter from O'Neill to Royal).  Still, Royal was given the opportunity to provide additional information, (*id.*), although it is not clear if she did.

entitlement to mere procedure.'" *Id.* (quoting *Wells v. State*, 100 Md. App. 693, 712 (1994)).

Here, Royal was able to meet with university officials regarding Seifert's conduct.  Like in

*Kearney*, Royal "has not identified a protected liberty or property interest in" anything further

the university should have done with respect to the incident.  *Id.* at *12.

Indefinite Medical Leave

To the extent that Royal claims her placement on indefinite medical leave subject to an

examination by the school and the school's health professional was in violation of procedural

due process, she has also failed to state a claim.  Royal was placed on indefinite medical leave

and could only return to school if she was evaluated and deemed fit to satisfy all essential

requirements of the program by the school and a health professional of the school's selection.

(ECF 24-5, September 16, 2016, letter from Hammersla).  First, it is not clear that Royal has a

property interest in her continued attendance without being evaluated by the school's health

professional.  "The Supreme Court has assumed, without actually deciding, that university

students possess a 'constitutionally protectible property right' in their continued enrollment in a

university." *Tigrett v. Rector & Visitors of Univ. of Virginia*, 290 F.3d 620, 627 (4th Cir. 2002)

(citing *Regents of the Univ. of Michigan v. Ewing*, 474 U.S. 214, 223 (1985)).  Here, Royal was

not expelled, but rather placed on medical leave and allowed to return if she satisfied certain

requirements.[23]

Even assuming Royal did have a property (or liberty) interest in her continued attendance

at school without satisfying the evaluation requirement, Royal was given proper procedural

protections.  First, the decision to place Royal on medical leave pending an evaluation was an

academic, rather than disciplinary, decision.  There is no contention that Royal engaged in

---

[23] Royal also claims she "incurred thousands of dollars in lost tuition" by being placed on leave, (No. 19-2826, Am. Compl. at 8–9, ¶ 18), but Royal requested, through a note from her personal physician, to be on medical leave until at least June 27, 2016, so it appears she would not have attended school for the rest of the spring semester anyway.

misconduct;[24] rather, the decision to place Royal on medical leave was apparently made with reference to her three clinical fail days, a mandatory meeting to arrange a clinical remedial plan that Royal had not attended, medical excuse letters, and communications characterized as "disturbing and unprofessional."  (ECF 24-5).  A failure to perform in the clinical setting is part of a student's academic performance.  *Horowitz*, 435 U.S. at 89–90; *accord Herron v. Virginia Com. Univ.*, 366 F. Supp. 2d 355, 360 (E.D. Va. 2004), *aff'd*, 116 F. App'x 467 (4th Cir. 2004).  Additionally, decisions based on professionalism concerns are also considered academic decisions.  *Horowitz*, 435 U.S. at 91 n.6 (dismissal based in part on personal hygiene and timeliness issues still a dismissal for "purely academic reasons"); *see also Zimmeck v. Marshall Univ. Bd. of Governors*, No. CIV.A. 3:13-14743, 2014 WL 108668, at *9 (S.D.W. Va. Jan. 10, 2014) (dismissal for "professionalism concerns is a dismissal for academic reasons").

Second, the procedural protections Royal was given satisfy constitutional requirements. As noted above, academic decisions (even including academic dismissals) do not require a hearing.  *Horowitz*, 435 U.S. at 90.  Here, it appears Royal was made aware of the faculty's dissatisfaction with her clinical progress through, *e.g.*, her receipt of fail days.  She was given the opportunity to appeal the medical leave decision to the faculty review board, and could submit additional material for the panel to review.  (ECF 24-5, September 16, 2016, letter from Hammersla).  Additionally, there is no indication that the medical leave decision was not "careful and deliberate."  Accordingly, Royal has failed to state a claim for a procedural due process violation.

### B.  Substantive Due Process

---

[24] Although Royal references an academic misconduct hearing, it is not clear what this refers to, and it does not appear that Royal alleges that she was ever disciplined for academic dishonesty or any other misconduct.  In any event, any alleged due process violation regarding academic dishonesty or misconduct has not been sufficiently alleged.

It appears that Royal alleges a denial of her substantive due process right "for a fair and safe scholastic environment." (ECF 32, Opp'n at 11). "To establish a violation of substantive due process, plaintiffs must 'demonstrate (1) that they had property or a property interest; (2) that the state deprived them of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental authority that no process could cure the deficiency.'" *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005) (citation omitted).

Even assuming a protected interest, "[s]tate deprivation of a protected property interest violates substantive due process only if it is 'so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies.' The state action must be 'conscience shocking, in a constitutional sense.'" *Siena Corp. v. Mayor & City Council of Rockville Maryland*, 873 F.3d 456, 463–64 (4th Cir. 2017) (citations omitted). In regards to the alleged verbal assault, "words alone are rarely, if ever, found to 'shock the conscience.'" *Doe v. Georgetown Cty. Sch. Dist.*, No. 2:14-CV-01873-DCN, 2015 WL 5923610, at *4 (D.S.C. Oct. 9, 2015) (and collecting cases). Additionally, receiving a failing grade or being placed on indefinite medical leave are not state actions that "fall[] so far beyond the outer limits of legitimate governmental authority that no process could cure the deficiency." *See Uzoechi v. Wilson,* No. CV JKB-16-3975, 2018 WL 2416113, at *8 n.5 (D. Md. May 29, 2018), *aff'd*, 735 F. App'x 65 (4th Cir. 2018) (regarding expulsion); *see also Doe v. Rector & Visitors of George Mason Univ.,* 132 F. Supp. 3d 712, 728 (E.D. Va. 2015) (noting that while "a proceeding [] may well have been flawed, [it] was certainly not so egregiously flawed as to shock the conscience").

Therefore, the court will dismiss Count I in No. 19-2826 and Count I in No. 19-2825.[25]

IV.     Denial of Reinstatement

Royal alleges in Count II of her complaint in No. 19-2825 that Kirschling denied her reinstatement in violation of the student handbook.  (No. 19-2825, Am. Compl. ¶ 50).  Kirschling addresses this as a contract claim in her motion to dismiss, yet Royal's opposition combines this claim with her Rehabilitation Act/ADA claim.  To the extent this is synonymous with her Rehabilitation Act/ADA claim, it will be discussed *infra*.  To the extent it alleges a breach of contract, it is barred by sovereign immunity (as against Kirschling in her official capacity) and fails to state a claim (as against Kirschling in her individual capacity).

"The doctrine of sovereign immunity has long been recognized as applicable in actions against the State of Maryland and its official representatives."  *Stern v. Bd. of Regents, Univ. Sys. of Maryland*, 380 Md. 691, 700 (2004).  The University of Maryland is an arm of the state for the purposes of asserting sovereign immunity.  *Id.* at 702.  And as discussed in note 19, *supra*, a claim against Kirschling in her official capacity is a claim against the University of Maryland.  In *Stern*, which involved a breach of contract claim against the University of Maryland for tuition raises, the Maryland Court of Appeals held that the University's sovereign immunity was not waived.  *Id.* at 726.  First, § 12-104(b)(3) of the Education Article, which authorized the Board of Regents of the University of Maryland to sue and be sued, did not waive sovereign immunity where "the Legislature did not authorize a method of appropriating the funds for an adverse judgment."  *Id.*  Second, immunity was not waived under § 12–201(a)[26] of the State Government

---

[25] Because the court finds that Royal has not sufficiently pled a violation of a constitutional right, the court does not discuss qualified immunity.  Further, because the court finds that Royal has failed to state a claim as to Count I (and as to all the claims in both amended complaints), the court does not discuss the defendants' statute of limitations argument.

[26] "Except as otherwise expressly provided by a law of the State, the State, its officers, and its units may not raise the defense of sovereign immunity in a contract action, in a court of the State, based on a written contract that an official

Article, which waives immunity for certain contract actions against the state, because the documents alleged to form the contract were not "signed by a duly authorized person." *Id.* Finally, the court found that sovereign immunity was not waived for the declaratory and/or injunctive relief sought. *Id.*

Here, there is no indication that "funds were appropriated for the purpose of satisfying adverse judgments based on claims or disputes relating to" violations of the student handbook. *Id.* at 718. Additionally, there is also no indication that the student handbook was signed by a duly authorized person. *See Doe v. Bd. of Trustees of St. Mary's Coll. of Maryland*, No. CV CBD-19-1760, 2019 WL 6215543, at *1 (D. Md. Nov. 20, 2019) ("The clear language of [*Stern*] requires far more than policy guidelines set forth in booklets, forms or manuals to be necessary to create a 'written contract' as contemplated by the statute," and finding sexual misconduct policy and procedures and an anti-harassment statement to not be written contracts satisfying the standards of § 12-201(a)).

Finally, as to the claim against Kirschling in her individual capacity, there is no indication that Kirschling personally was a party to the student handbook (the alleged contract). *See Keerikkattil v. Hrabowski*, No. CIV.A. WMN-13-2016, 2013 WL 5368744, at *9 (D. Md. Sept. 23, 2013) ("In support of his claims for breach of contract and promissory estoppel, Plaintiff does not allege any facts stating that the individual UMBC Defendants were parties to, and thus liable pursuant to, the alleged contract in their personal capacities.").

Therefore, the court will dismiss Count II (referred to as Count II.b), denial of reinstatement, in Case No. 19-2825.

V.     Defamation of Character

---

or employee executed for the State or 1 of its units while the official or employee was acting within the scope of the authority of the official or employee." Md. Code Ann., State Gov't § 12-201(a).

Royal brings a claim for defamation against Aldrich-Malapanes and Amos. Here, Royal has failed to state a claim, as she has not alleged any specific statements they made. "Under Maryland law, to present a prima facie case of defamation, a plaintiff must establish four elements: (1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Offen v. Brenner*, 402 Md. 191, 198 (2007) (citation omitted). "To satisfy federal pleading standards, a plaintiff must specifically allege each defamatory statement." *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 757 (D. Md. 2015). Here, Royal simply makes generalized allegations that Aldrich-Malapanes and Amos used "slander and libe[l] derived from 3rd party allegations." (No. 19-2826, Am. Compl. at 15, ¶ 19). Although Royal requests discovery so that her claims "can be further substantiated," (ECF 32, Opp'n at 12–13), she still must meet minimum pleading requirements, which she has not done.[27] Therefore, the court will dismiss Count II of Case No. 19-2826, defamation of character.

VI. Civil Rights Violations

Royal alleges that Pelligrini, Seifert,[28] Michelle Gonzales (clinical instructor), and Amos violated Royal's civil rights under the "University of Maryland's Non-Discrimination Policy Statement, the Fourteenth Amendment of the Constitution, and Title VII of the Civil Rights Act of 1964" through "verbal and written threats and intimidation." (No. 19-2826, Am. Compl. at 16, ¶¶ 25, 26). The university defendants argue that Royal fails to allege any factual incidents to support her claim, the alleged verbal assault is not a constitutional violation, Royal is not an

---

[27] Royal argues that it is "difficult" to provide each defamatory statement because they were verbal. (ECF 32, Opp'n at 12). The court is not clear what this means. At the motion to dismiss stage, Royal need only state what she alleges Aldrich-Malapanes and Amos said about her. But to the extent Royal does not know what Aldrich-Malapanes and Amos said about her, she cannot get to discovery simply by generally pleading slander and libel.
[28] As noted above, Seifert was not properly served, and the complaint as against him will be dismissed without prejudice.

employee for the purposes of Title VII, and she has not administratively exhausted her Title VII claim because she did not file a Charge of Discrimination with the EEOC. Royal does not respond in her opposition. In any event, to the extent Royal alleges discrimination, it has not been sufficiently alleged. She alleges that Seifert treated her, "an older African American female," differently than other students within her cohort. (*Id.* at 12, ¶ 4). But the complaint does not contain any factual allegations regarding how she was treated differently or any other specifics. Therefore, the court will dismiss this claim, Count III of No. 19-2826.

VII.    FERPA Violations

Royal alleges that Aldrich-Malapanes, Amos, and Kirschling violated the Family Educational Rights and Privacy Act of 1974 ("FERPA") because Aldrich-Malapanes and Kirschling "forwarded [Royal's] personal identifiable information to staff unassociated with [Royal's] impending dismissal, to include medical and student educational records, without written permission from Royal." (No. 19-2826, Am. Compl. at 17, ¶ 32; *see also* No. 19-2825 Am. Compl. ¶ 53 (against Kirschling)).

"FERPA [] does not provide a private right of action[.]" *Hodge,* 121 F. Supp. 3d at 496. Therefore, the court will dismiss the claims for FERPA violations, Count IV in No. 19-2826 and Count III in No. 19-2825.

VIII.    Rehabilitation Act and ADA Violations

Royal alleges that Kirschling, Pelligrini, Amos, and Mitchell violated the Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1990 ("ADA"), as amended, "by denying [Royal] appropriate sick leave from clinicals and school activities in accordance with her personal physician's medical findings." (No. 19-2826, Am. Compl. at 17, ¶ 35; *see also* No. 19-2825 Am. Compl. ¶ 55 (against Kirschling)). The university defendants first respond that there

is no individual liability under the Rehabilitation Act or the ADA. *See A.B. v. Baltimore City Bd. of Sch. Commissioners*, No. CIV.A. WMN-14-3851, 2015 WL 4875998, at *6 (D. Md. Aug. 13, 2015) ("There is clearly no individual capacity liability under [the ADA or the Rehabilitation Act]."). Royal, however, brings the claim against Kirschling, Pelligrini, Amos, and Mitchell in their official capacities also. Therefore, she has also alleged ADA and Rehabilitation Act violations against the University of Maryland School of Nursing.

In her opposition, Royal clarifies that she alleges that the university has violated the ADA and Rehabilitation Act by refusing to reinstate her unless she is evaluated by the school and the school's chosen health professional.[29] (ECF 32, Opp'n at 15–17). "Claims under the ADA's Title II[30] and the Rehabilitation Act can be combined for analytical purposes because the analysis is substantially the same." *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018) (citation omitted). "To establish a violation of either statute, plaintiffs must prove '(1) they have a disability; (2) they are otherwise qualified to receive the benefits of a public service, program, or activity; and (3) they were denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of their disability.'" *Id.* (quoting *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503 (4th Cir. 2016)). The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

---

[29] Although "[i]t is well-established that parties cannot amend their complaints through briefing or oral advocacy," *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184–85 (4th Cir. 2013) (citations omitted), the court will consider Royal's allegations in her opposition, to the extent they differ from those in her amended complaint, for the sake of thoroughness and because the court construes *pro se* pleadings liberally.

[30] Title II regards disability discrimination by public entities. 42 U.S.C. § 12132.

Royal has not sufficiently pled that she is disabled. She asserts that she was placed on "temporary leave not directly associated to medical reasons." (No. 19-2826, Am. Compl. at 8, ¶ 17). Her doctor extended her "sick leave" and "medical leave" twice. (*Id.* at 9–10, ¶¶ 21, 24). Royal does not allege what her impairment is or whether it meets the criteria for a disability. Additionally, she has not sufficiently alleged that she was regarded as disabled. Although the university placed her on medical leave pending a medical evaluation, a request for a medical evaluation is not sufficient to show that the university regarded Royal as disabled. *Coursey v. Univ. of Maryland E. Shore*, 577 F. App'x 167, 174–75 (4th Cir. 2014). *But see West v. J.O. Stevenson, Inc.,* 164 F. Supp. 3d 751, 773 (E.D.N.C. 2016) (calling into doubt *Coursey* as being inconsistent with the amendments to the ADA).

Even assuming the university regarded Royal as disabled, she has not sufficiently alleged it violated the ADA or Rehabilitation Act by placing her on leave pending a medical evaluation. Although there appears to be limited case law on the issue,[31] the Fourth Circuit has held that a university may require a student athlete returning from injury to obtain the clearance of the team physician before returning to play, finding that such clearance is "legitimately an essential eligibility requirement." *Class v. Towson Univ.*, 806 F.3d 236, 247 (4th Cir. 2015). "In determining whether an educational institution's eligibility requirement is essential and whether it has been met, we accord a measure of deference to the school's professional judgment . . . [although] in according deference, we still must take special care to ensure that eligibility requirements do not disguise truly discriminatory requirements." *Id.* at 246 (quotation marks and citation omitted). The medical decision must be "reasonable" i.e., "individualized, reasonably made, and based upon competent medical evidence." *Id.* at 247 (citation omitted).

---

[31] The defendants do not directly address the medical examination in their briefing. As noted above, however, Royal did not clearly make the claim that the medical examination requirement violated the ADA and Rehabilitation Act until her opposition.

Here, the actual medical decision is not before the court because Royal has not attended the medical evaluation; rather, the question is whether the university can condition her reinstatement on an evaluation by the school's chosen health professional, or whether it must accept her personal physician's note "clearing [Royal] of any and all medical concerns." (No. 19-2826, Am. Compl. at 11, ¶ 32). As in *Class,* the requirement that Royal be evaluated by the school and the school's chosen health professional is legitimately an essential eligibility requirement. *See Class*, 806 F.3d at 247. The evaluation is to determine whether Royal is fit to "satisfy all essential requirements of the program" and it is not clear whether the medical note from Royal's personal physician addressed this concern or whether he was familiar with the essential requirements of the program. The school and the school's chosen health professional are in the best position to evaluate Royal with respect to the "essential requirements of the program." Further, the school was within its rights to request an evaluation because Royal had requested leave from the program due to an unspecified impairment, making it likely that the impairment could affect her ability to meet the essential requirements of the program.[32] *See Hannah P. v. Coats*, 916 F.3d 327, 339 (4th Cir. 2019) (regarding the requirement that, in the employment context, a required medical examination be "job-related and consistent with business necessity," *see* 42 U.S.C § 12112(d)(4)(A), and finding this met when the employee had repeated attendance issues that impaired her ability to perform the essential functions of the job").

---

[32] Royal also argues that "other individuals in the same cohort with medical challenges were not subjected to the same level of scrutiny." (ECF 32, Opp'n at 4). In her affidavit attached to her opposition in No. 19-2825, she states that students in her cohort who were absent due to ailments for an even longer duration were "allowed reentry with little to no opposition." (No. 19-2825, ECF 21-1 at 27). Royal has not provided enough details about these other students to show that they are proper comparators to Royal. Here, in addition to being on medical leave, Royal had also failed three clinical days and had sent what the school characterized as disturbing and unprofessional messages.

Therefore, the court will dismiss the claims for violation of the ADA and the Rehabilitation Act, Count V in Case No. 19-2826 and Count IV in Case No. 19-2825.

IX.    Title IX Violations

Royal brings her Title IX claims against Kirschling, Mech, and O'Neill in their official and individual capacities.  Royal generally alleges that the defendants failed to file and process her Title IX complaint.  (No. 19-2826, Am. Compl. at 18, ¶ 38).  She also alleges that Kirschling violated Title IX by sanctioning "the discriminatory behavior" of Seifert, and "improperly conducted a Title IX investigation in which she alone conducted the research and drew conclusions based only on her musings."  (No. 19-2825, Am. Compl. ¶¶ 46, 48).   In her opposition, Royal appears to argue that Seifert's verbal assault against her was harassment in violation of Title IX, and that the defendants retaliated against her for complaining of the verbal assault.  (ECF 32, Opp'n at 17–18).

First, as the defendants argue, there is no individual liability under Title IX.  *Fitzgerald v. Barnstable Sch. Comm.,* 555 U.S. 246, 257 (2009) (Title IX "has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals.").  Therefore, Royal cannot bring a Title IX claim against the defendants in their individual capacities.

As to the official capacity claims, Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a).  "To establish a Title IX claim on the basis of sexual harassment, a plaintiff must show that (1) she was a student at an educational institution receiving federal funds, (2) she was subjected to harassment based on her sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and

(4) there is a basis for imputing liability to the institution." *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 695 (4th Cir. 2007).

Here, Royal has not met element 2. There is no indication that Seifert's alleged verbal assault was based on Royal's sex. Royal alleges that Seifert made "sexually charged power moves." (No. 19-2825, Am. Compl. ¶ 46). According to Royal, Seifert yelled at her while his body was "less than 5 inches from her breasts" and "pointed his finger within 1 inch of her face and body." (*Id.* ¶ 16). Royal has not alleged any "sex-specific conduct aimed to humiliate, ridicule, intimidate, or insult." *Doe v. Salisbury Univ.*, 107 F. Supp. 3d 481, 488 (D. Md. 2015).[33]

Royal also argues in her opposition that the defendants "retaliat[ed] with involuntary medical leave" after Royal informed the defendants of the Seifert incident. (ECF 32, Opp'n at 17). To make out a Title IX retaliation claim, a plaintiff "must allege that [she] engaged in protected activity under Title IX, and . . . that — as a result of [her] protected activity — [she] suffered an adverse action attributable to the defendant educational institution." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 694 (4th Cir. 2018) (citation omitted). In the Title VII employment context, "to establish that she engaged in a protected activity, [the plaintiff] must show that she (i) took some action to oppose an employment practice that she *subjectively* in good faith believed was unlawful, and (ii) that this belief was *objectively* reasonable in light of the facts." *Cuffee v. Tidewater Cmty. Coll.*, 409 F. Supp. 2d 709, 720 (E.D. Va.), *aff'd*, 194 F. App'x 127 (4th Cir. 2006) (citing *Peters v. Jenney*, 327 F.3d 307, 320–21 (4th Cir. 2003)) (emphasis in original). The Fourth Circuit has applied Title VII retaliation concepts to Title IX claims. *Feminist Majority*, 911 F.3d at 694. Here, even if Royal subjectively believed that

---

[33] Because the court finds that Royal has not shown harassment based on sex, it does not discuss her allegations that the school handled her Title IX complaint improperly, which would be relevant to the imputation of liability to the school. *Jennings*, 482 F.3d at 700 (describing standards for imputing liability to the institution).

Seifert's verbal assault was based on her sex, for the reasons discussed above, she has not sufficiently alleged that this belief was objectively reasonable.[34]

Therefore, the court will dismiss the claims for violation of Title IX, Count VI in No. 19-2826, and Count II (referred to as Count II.a) in No. 19-2825.

X.    Intentional Infliction of Emotional Distress ("IIED")

Royal brings the claim for IIED against Seifert, Kirschling, Mitchell, Pelligrini, and Amos in their official and individual capacities.[35]  Royal alleges that Seifert's engaged in extreme and outrageous conduct toward Royal, this was a form of hazing, and that the other defendants did not take appropriate action against Seifert.

The tort of IIED requires four elements: (1) intentional or reckless conduct; (2) extreme and outrageous conduct; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress.  *Harris v. Jones*, 281 Md. 560, 566 (1977). This tort is "rarely viable" and should be "used sparingly and only for opprobrious behavior that includes truly outrageous conduct."  *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 514 (1995) (quoting *Kentucky Fried Chicken Nat'l Mgmt. v. Weathersby*, 326 Md. 663, 670 (1992)).  Even though Seifert's conduct clearly upset Royal, it was not "beyond all possible bounds of decency."  *Rollins v. Verizon Maryland, Inc.*, No. CIV.A. RDB 09-2379, 2010 WL 4449361, at *8 (D. Md. Nov. 5, 2010) (citation omitted) (finding alleged conduct "that a supervisor yelled at her to 'sit down' in front of her co-workers, that she was disciplined in front of co-workers, that her co-workers were advised not to assist her, and that she was threatened with termination" not extreme and outrageous conduct for purpose of IIED claim).  Additionally,

---

[34] Royal does not allege that the placement on medical leave was in response to her allegation that clinical preceptors made inappropriate comments, which was treated by the university as a Title IX complaint.
[35] Within her allegations pertaining to the IIED count, Royal also alleges harassment under Title VII and constitutional injury under § 1983.  Those claims were discussed *supra*.

even if Seifert's conduct constituted hazing under the University of Maryland policies, which Royal alleges, Seifert must still sufficiently allege the elements of an IIED claim, which she has not done.

Because Royal has failed to state a claim of IIED against Seifert, she cannot maintain a claim against the other defendants based on a theory of vicarious liability. *Nesbitt v. Univ. of Maryland Med. Sys.*, No. CIV. WDQ-13-0125, 2013 WL 6490275, at *9 (D. Md. Dec. 6, 2013) ("Because Nesbitt did not state an IIED claim against Venuto, Nesbitt cannot state a claim that UMMS and BWMC are vicariously liable for Venuto's conduct under the doctrine of *respondeat superior*."). To the extent that Royal seeks to maintain a claim of IIED against the other defendants based on their own extreme and outrageous conduct, it is not clear what conduct Royal refers to, and in any event any conduct she alleges the other defendants engaged in is not sufficiently extreme and outrageous for a claim for IIED.

Therefore, the court will dismiss the claims for IIED, Count VII in No. 19-2826, and Count V (labeled as Count VII) in No. 19-2825.

## CONCLUSION

For the reasons stated above, the court will grant the motions to dismiss. The court will also grant Royal's motions to amend. Finally, because the court will dismiss both complaints, the motions to consolidate will be denied as moot. As separate order follows.


 4/13/20                                          /S/
_____                          _____
Date                                           Catherine C. Blake
                                               United States District Judge

27